## Commonwealth *versus* The Commonwealth Bank.

The *St.* 1828, *c.* 96, § 21, and the Revised Stat. *c.* 9, § 1, provide that every bank shall, within ten days after the first Mondays of April and October, in each year, pay a certain tax on the amount of its capital stock actually paid in, and that if any part of the capital stock shall have been paid in within six months previous to *said days*, the tax thereon shall be paid in proportion to the time that shall have elapsed after such payment. It was held, that the right to the tax accrues to the Commonwealth on the Monday specified, so as to constitute a debt from that time, and not ten days afterwards; that an act which was passed on the first Monday of April, 1838, and took effect *from and after its passage*, repealing the charter of a bank, but providing that nothing therein contained should be so construed as to release the corporation from any liability created by its charter, did not prevent the liability of the bank to the tax which accrued on that day, from attaching; that an action of debt might be brought under Revised Stat. *c.* 9, § 3, to recover such tax immediately after the expiration of the ten days, although the *St.* 1830, *c.* 58, renewing the charter of such bank, made it subject to *St.* 1828, *c.* 96, which provided, that if any bank tax remained unpaid *for thirty days*, the treasurer of the Commonwealth should issue his warrant of distress therefor ; and that such action should be brought against the corporation, and not against the directors as being trustees for the parties in interest after the repeal of the charter.

This was an action of debt, to recover the semi-annual bank tax for April, 1838. The action was brought on the 1st of May, 1838.

The trial was before *Putnam* J.

The Commonwealth Bank was incorporated by *St.* 1823, *c.* 127, and its charter was continued in force until the 1st of October 1851, by *St.* 1830, *c.* 58. On Monday the 2d of April, 1838, the *St.* 1838, *c.* 60, was passed, repealing the charter of the bank, but providing " that nothing in this act contained shall be so construed as to release or absolve the said corporation, or any director or stockholder thereof, from any liability created by any provisions of the acts hereby repealed," and " that this act shall take effect from and after its passage." The defendants contended, that they were entitled, by virtue of *St.* 1828, *c.* 96, to thirty days after the expiration of ten days from the first Monday of April, 1838, in which to make voluntary payment of the tax claimed by the plaintiff, which period of time had not elapsed, when this action was commenced.

The defendants also contended, that the repeal of the char

ter of the bank operated to prevent the claim of the plaintiff from arising, and as a bar to its recovery.

The defendants further contended, that the repeal of the charter operated by law to transfer all the assets of the bank to those persons who were directors at the time of the repeal, as trustees for all parties in interest, and that the claim of the plaintiff, if legal, must be made against such trustees, and not against the corporation, as such.

The plaintiff was to become nonsuit, or the defendants to be defaulted, according to the opinion of the Court.

*Austin*, Attorney-general, for the Commonwealth.

*Sprague* and *Goodrich*, for the defendants, to the point, that the repeal of the charter operated as a transfer of the as sets of the bank to the directors as trustees, cited *M'Laren* v. *Pennington*, 1 Paige, 102 ; Revised Stat. *c.* 44 § 7, 8, 9, 10 ; *Dorr* v. *Wainwright*, 13 Pick. 331.

SHAW C. J. delivered the opinion of the Court. Upon the facts as stated in the exceptions, the Court are of opinion, that the right of the Commonwealth to the semi-annual tax, accrued on the first Monday of April and October respectively, and not ten days after those days.

By the Revised Statutes, *c.* 9, § 1, every bank shall, within ten days after the first Monday of April and October, in each year, pay to the treasurer of the Commonwealth a tax, &c. ; and by § 2, if any of the capital stock shall have been paid in, within six months next before either of *said days*, the tax on such part shall be paid, in proportion to the time that shall have elapsed after such payment.

The term " said days," we are of opinion, must mean the first days of April and October before mentioned.   The term, from which the tax shall be considered as beginning to accrue, is fixed, but not the term to which it shall run.   That seems to be left to implication, as if it would of course be understood.   And it does appear to us, that it must be computed to the *said days*, and that the *said days* are the Mondays specified.   Again, by the Revised Stat. *c.* 36, § 45, the same provision, as to payment of the tax, is repeated ; and § 46, provides, that any bank, afterwards to be incorporated, or whose capital is not wholly paid in, shall furnish the treasurer, on or

before the first Monday &c. after every payment of its cap-
tal, with an abstract of the amount of the stock actually paid
in, together with the time, when the same was paid. Fixing
the time when the abstract shall be furnished, is strong evi-
dence tending to show, that the tax was then to accrue,
though not payable until ten days afterwards, and was intended
to show what was actually paid in, on the day when the tax
accrues. Otherwise every instalment paid between each day
and ten days after, would escape taxation for that time.

But these provisions were merely the renewal of *St.* 1828,
*c.* 96, § 21, and apparently without any alteration in principle.
A reference to this confirms the views already taken. After
providing that the bank shall within ten days after the first
Monday, &c., pay a tax, the section has this proviso, that if
any portion of the capital stock shall not have been paid in
six months previous to *said days*, then the tax shall be paid,
in proportion to the time since it was actually paid in. Here
the words " said days " obviously mean the first Mondays of
October and April, the tax is to be computed on the time
from the payment to such days respectively. The residue of
the section requiring abstracts of such payments, on or before
the first Mondays of October and April, confirms this interpre-
tation. On a view of all the statute provisions on the subject,
the Court are of opinion, that the right to the tax accrues on
the first Monday of April and October, so as to constitute a
debt from that time, and that the ten days are allowed for the
convenience of the banks in making payment.

Such being the character of this obligation, a present debt,
although not payable until a few days afterwards, it fell within
the saving clause of the repealing act, by which all the existing
debts and obligations of the bank remained in force.

In regard to the other point, which is, that the repealing act
having passed on the same day that the liability for the tax ac-
crued, the repeal prevented that liability from attaching, the
Court are of opinion, that the exception cannot prevail. We
do not go the length of the argument for the government, that
there being no fraction of a day, the repealing act, though pass-
ed on the 2d of April, did not go into operation till the suc-
ceeding day. We think the act did go into operation from the

actual time of its signature by the governor.  But the same
maxim applies to the accruing of the tax ; the act extended to
every part of the day.  It had in fact accrued and existed on
every part of the day, on which the repealing act was signed,
and took effect.  It had accrued when the repealing act passed.

The other grounds of defence relied on, are, in the opinion
of the Court, untenable.  The Revised Statutes, c. 9, § 3,
expressly give an action of debt to the Commonwealth, imme-
diately after the expiration of the ten days.  This provision
however having been passed after the renewal of the charter
of the defendant bank, it is contended that the legislature had
no authority to make such alterations in the mode of collecting
the tax, being inconsistent with the chartered rights of the bank.

By the renewal and continuance of this charter by *St.* 1830,
c. 58, it was made subject to the act to regulate banks and
banking, *St.* 1828, c. 96 ; and it was accepted upon these
terms.  By that act, if the tax was unpaid thirty days from the
time it became due, the treasurer, without notice, was to issue
his warrant of distress, which is in the nature of an execution,
to enforce the payment.  The clause granting this authority
was repealed by *St.* 1831, c. 64, § 4.  This act provides,
that in a great variety of cases, as well as in the case of banks,
instead of issuing a warrant of distress, the treasurer should
commence an action of debt, by writ to be served fourteen
days before the sitting of the court.  And this act not only
repeals the provision in question respecting banks, but it re-
peals all other statutes, which authorized the issuing of execu-
tions, warrants of distress, or any other *final* process, by any
officer, ministerial or judicial, against individuals or bodies cor-
porate, without previous notice.

We consider this act as one establishing a great principle of
public policy, applicable to all cases of collecting the public
moneys, founded upon a well-established principle of justice,
that in the case of the public, as well as of individuals, a hear-
ing shall be had, before an execution issues.  It is equally ben-
eficial to banks, as the provision for which it was substituted,
and as regulating a mere remedy, we think it was within the
fair scope of legislative authority.

The last exception is, that if the Commonwealth have any

remedy, it is against the directors, as trustees, and not against the bank, which has expired by the repeal of its charter. We think this is answered by the express provisions of the statutes. Revised Stat. *c.* 44, § 7. All corporations, including banks, whose charters expire, shall continue, with limited powers, for three years, for certain purposes, one of which is the prosecuting and defending suits by or against them. They must of course exercise all the functions necessarily incident to this limited and restricted action, including the holding of meetings, passing votes, electing directors and other agents. In case any creditor or other person interested, is dissatisfied with the proceedings of the directors, they may, by the 8th section of the same chapter, apply to a court to appoint receivers, if there shall appear sufficient cause therefor, to take charge of their estate and effects. But till such appointment, all the property remains vested in the corporation ; and the directors are no more trustees of the property, after the repeal, than before. They have the custody and management of the property, but the corporation is the legal person in whom the property is vested, and who is to sue or be sued in respect to such property, and the duties and obligations incident to its possession and management.

According to the agreement, the defendants are to be defaulted and judgment rendered for the Commonwealth.